The question before this court primarily is whether there was probable cause to justify, to support the search warrant. And of course, secondarily, always there's a Leon question, which I would be remiss in failing to address. So, really the question is, does the fact that the police, that a defendant is linked to a rental car, which is used in a shooting, does that create probable cause to search his apartment for a gun? And I would point out a couple things. Yes, the defendant rented the car, so clearly he's linked to the car and there's a link, you know, the victims identified the car. So there's really not a question there. But the victims, so, but in the car they find a prescription for this other person, Terence McLaughlin, and the victims identify Mr. McLaughlin as probably one of the perpetrators. They also say that somebody else, this person in the photo array who's not identified, is, might be one of, might be another person. But there's no indication that that person is Mr. Thomas. So, all we have is the link to the car, and he did rent the car. And I would submit that that is just not enough to get the search warrant to search his apartment. You don't think the, especially because of the limited time, I mean, he was the renter of the car during this pretty narrow time window in which the shooting occurred. You don't think that gives rise to probable cause to believe that he may well have been the driver? Well, not really, because he, I mean, I don't really see why that makes a difference. The car was rented for two days. It was returned on time. And he's the renter. He is the renter. And it covers, as Judge Rothfuss said, this time period when the shooting was reported, right? That's not, and then didn't they recover some cartridges at the supposed shooting scene? Yeah, they recovered a couple casings, a couple . . . Which means . . . . . . at the scene of the shooting, not in the car, I don't recall. Right, which means, you know, I guess adds to the credibility of the report that there was a shooting. Well, I . . . But it happened during this very, you know, narrow period of time, and you can make a, it's a reasonable inference to say that your client probably had possession of the car at that time of the shooting. Isn't that a reasonable inference? I'm not sure if you can make that inference. Why not? Because, well . . . If I rent a car for two days and then the car is, you know, the license plate is traced to a certain location at a certain time that during that two-day period I didn't have it, that's not a reasonable inference? Well, maybe that is a reasonable inference, but then perhaps I'm not sure that there's a reasonable inference that two weeks later, which is when they searched his apartment, that there's going to be a gun in his house. Because they linked him to the house and they linked him to the car, but there's no, but the linkage beyond that, there really isn't anything else. They also at that point, and I think this undermines the reasonableness that they would find the gun, I mean, because that's what they're looking for. I think that the, I think that it's undermined by the fact that the victims identified for sure one other person who's not the renter and maybe another person who's also apparently not the renter. Because, you know, if they identified Mr. Thomas, they would put that in the warrant affidavit. And that's, so we have to assume that's not the case. They identified two people and neither of them was him. Then two weeks later, they track him down and they show up at his apartment and they conduct, what is a warrantless arrest at gunpoint, which is discussed. And the reason I, the only reason I bring that up is because the court said, well, I don't have to deal with that. But I think if there isn't probable cause, then you do have to deal with that question. So I think that that, that is a further weakness in the chain. Well, remind me, the, the arrest, now I can't remember. It's on the 20th, June 20th. So the car is rented between June 4th and 6th. It's returned on the 6th. Oh, yeah, no, no, no. I mean, probable cause for the arrest from the government standpoint consisted of their, their suspicion that he was involved in the shooting or something else? That's right. And they would argue that he, he was, yes, the same, the same that's in the search warrant. It's the same thing. It's that he was linked to the car and that that is enough to both to arrest him. I'm sure the prosecutor will correct me if I'm wrong, but to arrest him and also then to get the search warrant. There was a lot. Of course, there was a lot of litigation below about what was found when and the protective suite. But ultimately, for this court's purposes, I don't think that really matters. Right. But the only evidence derived from his potentially unlawful arrest, well, actually, there really was none. I mean, he was in custody at the police station when he made these statements. But by then, they had found whatever they found. That's right. So I think that it really turns on the statements at the police station that were on culpatory were, were triggered after he was confronted with evidence of the gun. So it clearly stems from the, the unlawful search of the apartment. Am I? Yeah. Yeah. Right. But if we don't agree with you, obviously. If you don't agree with me, well, I'm, I'm, yeah, I'm, yeah, I'm out of luck. If there aren't further questions, I'll save the rest of my time for rebuttal. Yes. Let's hear from the government. May it please the court, Chelsea Norell on behalf of the United States. Here, the state magistrate judge did not clearly err in finding that there was probable cause to search the defendant's residence. Because looking at the totality of circumstances, there was a fair probability of finding evidence from the drive-by shooting at the defendant's apartment. As your honors mentioned, there was evidence that the defendant helped plan and execute this drive-by shooting by renting the car. He was the sole authorized driver of this rental car. He rented it for only a 48-hour period during which the drive-by occurred. And the car was returned within two hours of the drive-by shooting. Moreover, the defendant had his own car. So looking at this evidence, it was reasonable to infer that the defendant helped plan this drive-by shooting. At a minimum, he supplied the car for this drive-by shooting. So it was also reasonable to infer that other supplies for the drive-by shooting, including the gun, would be found at his residence. Additionally, at the time the officers got the search warrant, the gun used in the drive-by shooting had not yet been recovered. So it was reasonable to infer that at least one of the perpetrators of this crime, as we know there were two people in the car at the time of the drive-by shooting, would have the gun at his residence. Do we know there were two people just because of the prescription bottle, or was that with the witnesses? No, Your Honor. The witnesses actually told officers that two people were involved in the drive-by shooting. But didn't the witness say it was the passenger that fired the shot? They did not say that explicitly. They identified one individual as potentially involved. However, Your Honor, we don't know if a photo of Mr. Thomas was even in the photo lineup. That's not in the record. Additionally, there was probable cause to find that the weapon would be found at Mr. Thomas's home, because as the Ninth Circuit has held in both the Shields' and Bauer's opinions, when there is a gun-related offense, it is reasonable to infer that the gun may be found at one of the perpetrators' home. Remind me of the cases you cited in response to your opponent's argument that, look, too much time had gone by between the time of the crime and the search. I would point to the Bauer's opinion on that, Your Honor. There, there was a six-week lapse. Here, there was only a two-week lapse. And evidence such as a gun, which was the evidence in the Bauer's decision, is the type of item that someone would keep in their home for a longer period of time. Additionally, the magistrate judge relied correctly on the expert opinion of the affiant, who had more than 13 years of experience investigating crimes such as drive-by shootings, when the affiant said, it is reasonable, based on my experience, that we would find the gun or other fruits of this crime or other evidence of this crime at the defendant's residence. Additionally, the officers properly linked the defendant to this particular residence. They conducted surveillance at his apartment, saw that his car was parked in the parking lot of that apartment complex, registered to him at that address, and talked to a maintenance worker who had seen the defendant in the apartment and identified a photograph of him. So looking at all of these circumstances together and applying great deference to the magistrate judge's opinion about probable cause, the court did not clearly err in finding probable cause for the search warrant. Obviously, it would be a stronger case if only one person were suspected in this drive-by shooting, right? Certainly, Your Honor. But there were two people there, so the passenger is, you know, equally suspect, or even more so. So you can say, in effect, well, there's probable cause, it's at A, and there's probable cause, it's at B, and we want to search A. Is that what you're saying? Yes, Your Honor. The officer need not rule out other explanations of where the gun might be. What is probable? More than 50%? There's more than 50% chance that it's at A and also more than 50% that it's at B? I would point to the Ocampo decision there, Your Honor. The courts say there just needs to be a reasonable nexus between the criminal activity and the evidence to be found. A reasonable nexus is certainly created by the fact that the defendant rented this car. And I would point, Your Honor, to... Well, it's a reasonable nexus that he drove the car, but is that a reasonable nexus that he possessed a weapon as opposed to the passenger? Yes, Your Honor. Why is that? I would point you to the decision in United States v. Washington where there was a drive-by shooting, and the officers knew that the defendant's home that they searched was not the shooter because his brother had actually confessed to the shooting. And they found that there was probable cause to search the defendant simply because he provided the car used in the drive-by shooting. Well, he was also the brother, which makes a difference, I think. I'm sorry? He's also the brother, which makes a difference. Well, the brother didn't live with the defendant in the Washington case. It doesn't matter. He's still his brother. Here, Your Honor... His brother says, here, keep this for me. He's not going to say no to his brother, is he? Your Honor, that's possible, but I would submit that the same facts apply here. If two people perpetrate a crime together and one is in charge of obtaining the car used in the drive-by, it's also reasonable to assume that either that person also supplied the gun or may be stashing the gun for his co-conspirator. Here, this is not simply a situation where Mr. Thomas just lent his car to another person, as may have been the case in Washington. He purposefully planned ahead and rented this car, even though he owned his own car, and rented it for the short window in which the drive-by occurred, and then returned it immediately after the crime was completed. All of this evidence supports a reasonable inference that there was a fair probability that other evidence of the drive-by shooting would be found in his residence. Briefly, Your Honors, I'll also address the good faith argument. To the extent that the court did clearly err in determining that probable cause existed here, the officers reasonably relied on that warrant. There are four exceptions in which the good faith doctrine does not apply. Defense counsel points to one, that this warrant was facially deficient, that it lacked probable cause. However, based on all of the evidence and the case law that we've just discussed, that's simply not so. Additionally, two courts, both the magistrate judge and the district court, found that this warrant was supported by probable cause, further suggesting that the officers reasonably relied on that warrant. Okay. Thank you very much. Thank you. Let's hear from counsel for the defendant in rebuttal. Just a couple points, Your Honor. So first of all, I'd like to address the Bowers case. To the extent that the government is relying on Bowers, they are really quite different. Bowers involved, there was so much more detail. It's really worth reading the Bowers opinion because they include the entire affidavit, which is replete with detail that's completely lacking here, including the fact that they linked up the suspected moniker of the person whose home they wanted to search. They linked the moniker to his true ID, and there was the other shooter, the other person who was involved in the murder, had already identified him, and they hadn't found the gun. So there was all this evidence pointing to the fact that the person in that case, in Bowers, was actually the shooter, one of the shooters involved in murdering a park ranger. The detail is just completely at odds with what's here. I think government counsel relied on that case in part, at least, for the time to respond to your argument that too much time had elapsed. Right, right. And for that point, yes. But I think the question of staleness also depends on the amount of detail that they had. Another thing I'd like to point out is the government is essentially saying that, oh, Tracy Thomas was involved in planning the shooting, and we have all this evidence of planning, and he helped to organize it. There's no evidence of that. All we know is that he rented the car. Well, the fact that he had his own car, and the shooting did occur in the area where he lived. No, it didn't, actually, Your Honor. How far away? He lived in Burbank, right over there, and the shooting was in South Central. Okay. That's not really— Yes, it is. I'm talking about, it's not like he drove to Utah. I mean, he was in his home town. Okay, but to me, that's not—I mean, that's— Okay, well— It's L.A. traffic. It's local. It's local is what I meant, right? Then lastly, okay, well, lastly, the last point I'd just make, in terms of good faith, yes, there is only one arguable exception, and that's that it's not a colorable affidavit, that this is just too little, and I would submit that that is, in fact, the case here. Okay, thank you very much. Thank you. The case just argued is submitted.
judges: Tashima, Watford, Robreno